Darryll A. Buford (DB-0546)
Samantha H. Evans (SE-0728)
FOX ROTHSCHILD LLP
100 Park Avenue, 15th Floor
New York, NY 10017
Phone:  212.878 7900
Fax:  212.692 0940
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VINCENT AGOSTINO,<br><br>                    Plaintiff,<br><br>- against -<br><br>DAVID SIMPSON, individually; WILLIAM REGAN, individually; PHILIP AMICONE, individually; and THE CITY OF YONKERS, New York.<br>                    Defendants. | **ORAL ARGUMENT REQUESTED**<br><br>**ECF Case**<br>Civil Action No.<br>08-CV-5760 (CS) (MDF) |

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED.R.CIV. P. 12(b)(6)**

---

Darryll A. Buford (DB-0546)
Samantha H. Evans (SE-0728)
**FOX ROTHSCHILD LLP**
100 Park Avenue, 15th Floor
New York, NY 10017
Tel: (212) 878-7900
Fax: (212) 692-0940

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

SUMMARY OF FACTS ............................................................................................................3
   1.    PLAINTIFF RECEIVES A NOTICE OF DISCIPLINE UNDER SECTION 75 OF NEW
       YORK CIVIL SERVICE LAW ....................................................................................3
   2.    THE COMPLAINT ....................................................................................................4
       (A)    THE COMPLAINED OF FIRST AMENDMENT VIOLATIONS ...............................5
       (B)    THE COMPLAINED OF DUE PROCESS VIOLATIONS .......................................5
   3.    ZHERKA'S LAWSUIT AGAINST THE DEFENDANTS ....................................................6

LEGAL ARGUMENT...............................................................................................................7
   I.    THE MOTION TO DISMISS STANDARD ......................................................... 7
   II.    THE COMPLAINT FAILS TO ALLEGE THE PERSONAL
       INVOLVEMENT OF THE INDIVIDUAL DEFENDANTS ............................... 8
   III.    THE INDIVIDUAL DEFENDANTS ARE  ENTITLED TO QUALIFIED
       IMMUNITY........................................................................................................ 9
       (A)    THE APPLICABLE LEGAL STANDARD ........................................................ 9
       (B)    THE ALLEGED CONSTITUTIONAL RIGHTS IMPLICATE SECTION 75 OF
            NEW YORK CIVIL SERVICE LAW AND IS NOT A CONSTITUTIONAL
            RIGHT AT ALL .......................................................................................... 10
            (1)    Right of Association ..................................................................... 11
            (2)    Freedom of Speech/Freedom of Press ........................................... 12
            (3)    The Due Process Violation ........................................................... 14
       (C)    THE DECISION TO DISCIPLINE PLAINTIFF WAS OBJECTIVELY
            REASONABLE ............................................................................................ 16
   IV.    THE FREEDOM OF SPEECH/FREEDOM OF THE PRESS CLAIM
       SHOULD BE DISMISSED BECAUSE PLAINTIFF LACKS
       STANDING TO PURSUE THE CLAIM............................................................. 17
   V.    TO THE EXTENT THAT THE COURT PERCEIVES A
       CONSTITUTIONAL VIOLATION UNDER ANY OF THE CLAIMS
       ASSERTED BY PLAINTIFF, IT SHOULD, NONETHELESS, STAY
       THIS ACTION PENDING THE RESOLUTION OF THE ARTICLE 75
       PROCEEDING ................................................................................................ 18

CONCLUSION......................................................................................................................20

## TABLE OF AUTHORITIES

### CASES

*ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007).....................................................................................................3, 7

*Bell Atlantic Corp. v. Twombly*,
    ___ U.S. ___, 127 S.Ct. 1955 (2007).......................................................................................7

*Birmingham v. Ogden*,
    70 F.Supp. 2d 353 (S.D.N.Y. 1999).......................................................................................12

*Burkybile v. Bd. Of Educ. of the Hastings-on-Hudson Union Free Sch. Dist.*,
    411 F.3d 306 (2d Cir. 2005)...................................................................................................19

*Camacho v. Brandon*,
    317 F.3d 155 (2d Cir. 2003)...................................................................................................12

*Cobb v. Pozzi*,
    363 F.3d 89 (2d Cir. 2003).....................................................................................................11

*Colon v. Coughlin*,
    58 F.3d 865 (2d Cir. 1995)......................................................................................................8

*Connell v. Signoracci*,
    153 F.3d 74 (2d Cir. 1998)......................................................................................................9

*Cooper v. Metropolitan Transp. Auth.*,
    No. 04 Civ. 525 (LTS) (AJP), 2006 WL 1975936 (S.D.N.Y. July 14, 2006) ..........................9

*DeMasi v. Benefico*,
    ___ F. Supp. 3d ____, No. 97 Civ. 8049 (WCC) (S.D.N.Y. June 13, 2008)...........................15

*England v. Louisiana Bd. Of Med. Examiners*,
    375 U.S. 411 (1964)...........................................................................................................14, 15

*Engquist v. Oregon Dep't of Agriculture*,
    ___ U.S. ___, 128 S.Ct. 2146 (2008).....................................................................................10

*Hickerson v. City of New York*,
    146 F.3d 99 (2d Cir. 1998).....................................................................................................15

*Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880-881
    (2d Cir. 1996) ......................................................................................................................15

*Holowecki v. Fed. Express Corp.*,
   440 F.3d 558 (2d Cir. 2006)........................................................................................7

*Kirschner v. Klemons*,
   225 F.3d 227 (2d Cir. 2000)......................................................................................18

*Kramer v. Time Warner, Inc.*,
   937 F.2d 767 (2d Cir. 1991)........................................................................................7

*Lennon v. Miller*,
   66 F.3d 416 (2d Cir. 1995).................................................................................. 10, 16

*Locurto v. Giuliani*,
   447 F.3d 159 (2d Cir. 2006)......................................................................................11

*Mascetta v. Miranda*,
   957 F. Supp. 1346 (S.D.N.Y. 1997)..........................................................................16

*Mauro v. Village of Freeport*,
   143 A.D.2d 75 (2d Dep't 1988).................................................................................19

*McKenna v. Wright*,
   386 F.3d 432 (2d Cir. 2004)........................................................................................9

*Pickering v. Bd. Of Educ.*,
   391 U.S. 5673 (1968)................................................................................................11

*Poe v. Leonard*,
   282 F.3d 123,131 (2d Cir. 2002)................................................................................9

*Rivers v. McLeod*,
   252 F.3d 99 (2d Cir. 2001)........................................................................................18

*Samuels v. N. Telecom, Inc.*,
   942 F.2d 834 (2d Cir. 1991)......................................................................................14

*Sheppard v. Beerman*,
   94 F.3d 823 (2d Cir. 1996)........................................................................................16

*Smith v. Local 819 I.B.T. Pension Plan*,
   291 F.3d 236 (2d Cir. 2002)........................................................................................8

*Uzdavines v. Week Marine, Inc.*,
   418 F.3d 138 (2d Cir. 2005)......................................................................................14

*Warth v. Seldin*,
   422 U.S. 490 (1975)..................................................................................................17

iii

*X-Men Sec., Inc. v. Pataki,*
    196 F.3d 56 (2d Cir. 1999)...............................................................................10, 11

*Younger v. Harris,*
    401 U.S. 37 (1971)...............................................................................................18

### STATUTES

N.Y. CIVIL SERVICE LAW § 75(1)(a), (3) ..............................................................1, 3, 4

N.Y. CIVIL SERVICE LAW § 76(1) .................................................................................15

N.Y. CIVIL SERVICE LAW § 77 .....................................................................................19

Fed R. Evidence 201 ...................................................................................................7

Rule 12(b)(6) of the Federal Rules of Civil Procedure...................................................1

42 U.S.C. § 1983.........................................................................................................2

### U.S. CONSTITUTION

First Amendment ............................................................................................... passim

Fourteenth Amendement.............................................................................................1, 4

Defendants David Simpson ("Simpson"), William Regan ("Regan"), Philip Amicone ("Amicone") and the City of Yonkers, New York (the "City") (collectively, "Defendants") submit this memorandum of law in support of their motion to dismiss the complaint of plaintiff Vincent Agostino ("Agostino" or "plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff, a City employee assigned to the Office of the Mayor, presents this Court with a vague, conclusory and speculative complaint that is devoid of sufficient factual allegations to support the claims for relief. Plaintiff does so in the hopes that the Court will take a leap of faith and presume that he has set forth plausible facts to support his claims that Defendants violated his constitutional rights to freedom of association, freedom of speech and freedom of the press, and procedural due process under the Fourteenth Amendment. The Complaint allegations arise out of the City's decision to prefer disciplinary charges against plaintiff under section 75 of the New York Civil Service Law, charges that seek plaintiff's dismissal for poor performance (the "administrative proceeding"). The administrative proceeding is ongoing.

The Complaint is deficient in several respects and should be dismissed. First, the Complaint does not allege that any of the individual defendants were personally involved in the decision to recommend that plaintiff be disciplined. Second, the individual defendants are entitled to qualified immunity. The Complaint implicates the legislative scheme set up to ensure that New York government employees are not arbitrarily and capriciously subjected to disciplinary action by affording them notice of the administrative proceeding and the opportunity to dispute the charges, cross-examine witnesses and present evidence on their behalf. The Complaint does *not* implicate any constitutional concerns.

To this extent, the Complaint should be dismissed in its entirety because, although the Complaint uses constitutional labels (and does so in conclusory fashion), it fails to adequately allege any constitutional violation on which relief may be granted. Here, plaintiff's alleged claims under 42 U.S.C. § 1983 arise out of First Amendment violations against a local newspaper and its publisher. Plaintiff's associational right claim fails because the alleged association between himself and the publisher is too attenuated to state a cognizable associational rights claim. Plaintiff's freedom of speech/freedom of press claim fails because he lacks third-party standing to assert claims on behalf of the newspaper and its publisher. The local newspaper and its publisher have filed a lawsuit that concerns the same legal claims and set of operative facts relied upon in the Complaint to supposedly support the freedom of speech/freedom of press claim. Because the newspaper and its publisher prevailed in that case, its rights are well protected and plaintiff should not be permitted to press issues in the Complaint that have already been fully litigated by the newspaper and its publisher. As such, the freedom of speech/freedom of press claim should be dismissed. Finally, plaintiff's due process claim also fails because plaintiff has been and is being afforded due process through the ongoing administrative proceeding.

The individual defendants are also entitled to qualified immunity because the City had a reasonable good-faith basis to believe that it could discipline plaintiff for performance deficiencies without violating his constitutional rights. Plaintiff simply can not use constitutional concerns as both a sword and a shield in order to remain employed by the City. Moreover, by setting in motion the administrative process, the City acted in a manner consistent with constitutional precepts. Besides, plaintiff has no facts to support the notion that the City's decision to prefer disciplinary charges against him was unconstitutionally motivated. Put

2

another way, plaintiff draws no nexus between the employment decision to prefer charges against him and the alleged constitutional violations.

Finally, even if the Court determines that plaintiff has stated one or more constitutional claims, the Court may best preserve its time and resources by staying this case pending the completion of the administrative proceeding since similar legal and factual issues are presented in both. Indeed, if the administrative proceeding ends favorably for plaintiff, this action may be all but moot.

## SUMMARY OF FACTS

The following facts are taken from the Compliant, public filings, and documents that are integral to the Complaint or are known to or should have been known to plaintiff at the time the Complaint was drafted. Except to the extent contradicted by the public filings and documents known to plaintiff, for purposes of this motion only, the City accepts the allegations of the Complaint as true. *See ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (although a court considering a Rule 12 motion to dismiss for failure to state a claim is limited to the facts stated in the complaint, the court may also consider any written instrument attached to the Complaint, statements or documents incorporated into the Complaint by reference, public filings, and documents possessed by or known to plaintiff and upon which it relied in bringing suit).

1.   **PLAINTIFF RECEIVES A NOTICE OF DISCIPLINE UNDER SECTION 75 OF NEW YORK CIVIL SERVICE LAW**

Agostino is employed as a senior video technician with the City and is assigned to the Office of the Mayor. (Declaration of Darryll A. Buford, dated August 21, 2008 ("Buford Dec."), Exh. A (hereafter, the "Complaint"), ¶ 3.) Amicone is the Mayor of the City of Yonkers. (Complaint, ¶ 6.) Regan is the Deputy Mayor of the City of Yonkers. (Complaint, ¶ 5.)

Simpson is the Director of Communications for the City and Agostino reports directly to Simpson. (Complaint, ¶ 4.)

As a permanent, tenured civil servant, plaintiff's employment is subject to section 75 of the New York State Civil Service Law ("Article 75"). (Complaint, ¶ 3; *see* N.Y. CIVIL SERVICE LAW § 75(1)(a)) On or about January 28, 2008, the City served plaintiff with a Notice of Disciplinary Charges under Article 75 (the "Charge"). (Complaint, ¶ 8; Buford Dec., ¶ 2; Exh. B.) The Charge alleged that plaintiff: (1) failed to perform his duties in a timely and satisfactory manner (citing four separate incidents); (2) had unauthorized lateness and absences from work (citing five separate incidents); and (3) was insubordinate and disrespectful (citing two separate incidents). (*See* Buford Dec., Exh. B.)

As authorized by Article 75, plaintiff was suspended without pay for thirty days. (Complaint, ¶ 8; *see* N.Y. CIVIL SERVICE LAW § 75(3).) As further set forth in Article 75, after the thirty-day-period expired without a hearing, plaintiff was reinstated with pay pending the result of the hearing. (Complaint, ¶ 8; *see* N.Y. CIVIL SERVICE LAW § 75(3).) The hearing commenced on April 29, 2008 and is ongoing. (The next scheduled dates for the Article 75 proceeding are September 3 and 16, 2008.) Plaintiff filed this Complaint thereafter on June 26, 2008.

2.    **THE COMPLAINT**

In his Complaint, plaintiff asserts three claims for relief. The first two claims are for alleged First Amendment violations: (1) right of association and (2) freedom of speech and/or freedom of press. The third cause of action is for an alleged Fourteenth Amendment due process violation. Plaintiff sues defendant Amicone, Regan and Simpson in their individual capacities.

4

### (A)    The Complained of First Amendment Violations

Starting in or around August 2006, *The Westchester Guardian* (the "Guardian"), a weekly newspaper owned by Selim ("Sam") Zherka ("Zherka"), published a number of articles supporting Amicone's defeat in the 2007 election. (Complaint, ¶ 3.)  (Plaintiff's father, Santo Agostino, is acquainted with Zherka. (Complaint, ¶ 3).)  The articles claimed that Amicone's administration was corrupt, that police brutality by the City's police officers went unchecked, criticized the use of public money to pay the salaries of politically connected individuals with "no-show" jobs, and accused the mayor's administration of "other criminal wrongdoing." (Complaint, ¶ 3; Buford Dec., ¶ 3; Exh. A.)  According to the Complaint, Santo Agostino supported Zherka and the Guardian's activities in opposition to Amicone's administration and advocated in favor of Amicone's defeat in the 2007 election for mayor. (Complaint, ¶ 3.)

The Complaint alleges that, in response to the public criticisms, the City violated Zherka's and the Guardian's First Amendment rights by confiscating newspapers and the newsracks from which they were distributed (hereafter, "distribution boxes") and charging Zherka and others with violating a City Code that was believed to be unconstitutional. (Complaint, ¶ 3.)  Starting on or about August 2, 2007, eleven different law suits have been filed based upon alleged First Amendment violations arising out of the alleged confiscation of the distribution boxes and newspapers by City employees: one by the Guardian and Zherka and ten by different Guardian readers (one of these ten also names Zherka as a lead plaintiff). (Buford Dec., ¶ 8; Exhs. E-F.)

### (B)    The Complained Of Due Process Violations

The Complaint alleges that the City commenced the Article 75 proceeding against plaintiff in retaliation for the Guardian and Zherka exercising their First Amendment rights. (Complaint, ¶ 8.)  At the start of the Article 75 proceeding, which was attended by Zherka,

5

Santo Agostino and Guardian reporters, the designated hearing officer, uncomfortable with the presence of the media and video cameras, complained in an off-the-record conversation with counsel, that he did not want any "fucking media" or "fucking cameras" in the hearing room. (Complaint, ¶ 9; Buford Dec., ¶ 5, Exh. C, pp. 17-21.) After some colloquy, it was determined that the media could attend the hearing and videotape the proceedings (despite the presence of a stenographer who was recording the proceedings) with certain restrictions (*e.g.*, the hearing officer did not want his face to appear on camera). (Buford Dec., Exh. C, pp. 17-21.) The Complaint alleges that plaintiff's name was removed from the City's payroll system, a happenstance that the Complaint further alleges was tantamount to a retaliatory termination based, again, upon the activities of Zherka and the Guardian. (Complaint, ¶¶ 10-11; Buford Dec., Exh. A.)

3.    ZHERKA'S LAWSUIT AGAINST THE DEFENDANTS

As noted above, on August 9, 2007, the Guardian and Zherka commenced an action in the Southern District of New York against the City and various public officials, including Amicone, the police and public works commissioners, and unknown police officers and sanitation workers (the "Zherka complaint"). (Buford Dec. ¶ 8, Exh. F.) The docket number assigned to the Zherka complaint is 07 Civ. 7078 (CLB). The Zherka complaint asserted that the defendants violated the Guardian's and Zherka's constitutional rights guaranteed by the First and Fourteenth Amendments and sought compensatory and punitive damages. (Buford Dec. ¶ 8, Exh. F.) The Zherka complaint concerned allegations that: (1) defendants unlawfully confiscated copies of the Guardian, (2) Guardian employees were threatened with arrest for distributing the paper, (3) Zherka was threatened with arrest for distributing the newspaper, and (4) Guardian employees and Zherka were issued desk appearance tickets for distributing the newspaper. (*See* Buford Dec. ¶ 8, Exh. F.) In a stipulation and order filed on November 13, 2007, Zherka and the

6

Guardian withdrew, with prejudice, their claims for compensatory and punitive damages. (Buford Dec., Exh. E.) Finally, in a memorandum and order dated March 2, 2008, issued after a full bench trial, the Court found that the City violated the Guardian's and Zherka's constitutional rights, granted a permanent injunction against the City, directed that all pending administrative or criminal charges against the Guardian's employees and agents be dismissed, and that the Guardian's property be returned. (*See* Buford Dec., Exh. D, p. 45.)

## LEGAL ARGUMENT

### I.

### THE MOTION TO DISMISS STANDARD

This Court may grant a motion to dismiss where the plaintiff has not plead enough facts to state a claim for relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1974 (2007). When reviewing the motion, the Court must assume that all of the allegations of the complaint are true and draw inferences in favor of the non-moving party. However, the Court may consider any written instrument attached to the Complaint, statements or documents incorporated into the Complaint by reference, public filings, and documents possessed by or known to plaintiff and upon which it relied in bringing suit. *See ATSI Commc'n, Inc.*, 493 F.3d at 99. Courts may also consider materials that may be judicially noticed. *See* Fed R. Evid. 201; *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). Courts may further consider documents that are integral to the Complaint and that plaintiff heavily relied upon in bringing suit. *See Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006).

Moreover, the United States Supreme Court recently noted that the factual allegations of the Complaint must present more than a speculative claim for relief. *See Bell Atlantic Corp.*, 127 S.Ct. at 1959. In that regard, bald legal conclusions dressed up as factual allegations are

7

similarly insufficient to raise a plausible claim. *See Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002).

Under these standards, this lawsuit must be dismissed in its entirety because: (1) the Complaint does not allege what role, if any, the individual defendants played in the employment decision at issue; (2) the individual defendants are immune from suit under the qualified immunity doctrine; and (3) plaintiff lacks standing (as a third-party or otherwise) to pursue the Guardian's and Zherka's First Amendment freedom of speech/freed press claim. Alternatively, this action should be stayed until the completion of the Article 75 proceeding.

## II.

### THE COMPLAINT FAILS TO ALLEGE THE PERSONAL INVOLVEMENT OF THE INDIVIDUAL DEFENDANTS

As a threshold matter, the Complaint should be dismissed as to each of the individual defendants because the pleaded allegations are deficient as to each. It is firmly established that in order to recover damages against an individual defendant in a § 1983 case, the plaintiff must allege that the individual defendant played a role in the decision on which the alleged constitutional violation is premised. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Here, plaintiff failed to allege in his Complaint any facts against any of the individual defendants that would permit an inference that he was personally involved in the decisions that gave rise to the alleged constitutional violations. As such, the Complaint allegations as to each are infirm and the Complaint should be dismissed.

The gravaman of the Complaint is that in order to retaliate against the plaintiff, the Article 75 proceeding was filed as a pretext. However, plaintiff fails to set forth any facts alleging that the Defendants lacked a reasonable good-faith basis for commencing disciplinary proceedings against plaintiff, the bona fides of which are plainly spelled out in the Charge.

8

Because plaintiff is unable to allege that the Charge against him in the Article 75 proceeding was not warranted, this Court may not speculate that a constitutional violation exists where the pleading contains no factual allegations in support of the claimed constitutional violation. Simply put, plaintiff has not and cannot allege that there is a nexus between the legitimate Article 75 proceeding and the alleged constitutional violations.    As such, the Complaint should be dismissed as to each of the individual defendants.

With particular regard to Amicone and Regan, plaintiff does not allege in his Complaint and plaintiff can not develop any set of facts showing that Amicone or Regan were involved in the decision to file the Charge against plaintiff. Having failed to do so, the Complaint should be dismissed as to Amicone and Regan for this additional reason.

### III.

### THE INDIVIDUAL DEFENDANTS ARE
### ENTITLED TO QUALIFIED IMMUNITY

Defendants Amicone, Regan and Simpson are entitled to qualified immunity on the pleaded facts and the materials that the Court may properly review on a motion to dismiss.

### (A)    THE APPLICABLE LEGAL STANDARD

This Court may dismiss the individual defendants from this case on a pre-answer motion to dismiss on the basis of qualified immunity so long as the facts that support the motion are properly before the Court. *See McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004); *Connell v. Signoracci*, 153 F.3d 74, 80 (2d Cir. 1998).  Qualified immunity shields public officials from civil liability for their discretionary functions, provided that their "'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"    *Cooper v. Metropolitan Transp. Auth.*, No. 04 Civ. 525, 2006 WL 1975936 * 4 (S.D.N.Y. 2006), *quoting Poe v. Leonard*, 282 F.3d 123,131 (2d Cir. 2002).

9

To be entitled to qualified immunity, a public official need only demonstrate *one* of the following: (1) that the alleged constitutional right is not a "constitutional right at all"; (2) that at the time of the alleged conduct, the constitutional right was not "clearly established"; or (3) that it was objectively reasonable for the public official to believe his acts did not violate the plaintiff's alleged constitutional rights. *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 66 (2d Cir. 1999). Each of these questions may be decided by the court as a matter of law. *Id.*; *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995). And, where the Complaint fails to state a claim for relief against the individual defendants they are entitled to the prompt dismissal of the suit. *See X-Men Sec., Inc.,* 196 F.3d at 66.

Under the above standards, the individual defendants should be dismissed from the case. Plaintiff cannot set forth any set of plausible facts that implicate any constitutional rights. Additionally, the disciplinary action taken against plaintiff was objectively reasonable.

**(B)   THE ALLEGED CONSTITUTIONAL RIGHTS IMPLICATE SECTION 75 OF NEW YORK CIVIL SERVICE LAW AND IS NOT A CONSTITUTIONAL RIGHT AT ALL**

The bald conclusory allegations of the Complaint invite rampant speculation and fail to implicate a constitutional right on which relief may be granted. In an attempt to have his disciplinary charges overseen or reviewed by the federal courts, plaintiff asserts three alleged constitutional violations: (1) right of association; (2) freedom of speech/freedom of press; and (3) due process violation in connection with the conduct of the Article 75 proceeding.

This case is about the disciplinary charges against plaintiff. The fact that plaintiff dresses up the Complaint with references to the First and Fourteenth Amendments does not miraculously transform the claims asserted in the Article 75 proceeding into constitutional claims. *See Engquist v. Oregon Dep't of Agriculture*, ___ U.S. ___, 128 S.Ct. 2146, 2152 (2008) (pointing out that one of the two basic principles used in evaluating whether a public sector employee's

10

constitutional claim is cognizable is "whether the asserted employee right implicates the basic concerns of the relevant constitutional provision, or whether the claimed right can more readily give way to the requirements of the government as employer.") Here, plaintiff relies upon constitutional labels and the Guardian's and Zherka's public statements about the Amicone administration to insulate himself from discipline under Article 75. Under the circumstances, the City's need to manage its personnel outweighs plaintiff's manufactured constitutional claims. *See Locurto v. Giuliani*, 447 F.3d 159, 163 (2d Cir. 2006) (noting that government employers must retain some freedom to dismiss underperforming employees).

As set forth below, Plaintiff's constitutional claims are flawed. Accordingly, the Complaint should be dismissed with prejudice as to all Defendants, including the City. If the Court declines to dismiss the entire Complaint, it should, nonetheless, dismiss the individual defendants from the case.

    (1)   **Right of Association**

Plaintiff's First Amendment freedom of association claim is not cognizable because Plaintiff's alleged association with the Guardian and Zherka is non-existent. (As best as can be gleaned from the Complaint, Plaintiff's associational rights claim is based on a claim of intimate association. To the extent that Plaintiff is attempting to assert a claim of expressive association, Plaintiff's claim still fails because the alleged association does not relate to a matter of public concern. *See Cobb v. Pozzi*, 363 F.3d 89, 102 (2d Cir. 2003) (noting that the public concern test set forth under *Pickering v. Bd. Of Educ.*, 391 U.S. 5673 (1968) applies to associational rights claims). Indeed, plaintiff fails to allege in his Complaint that he was personally engaged in constitutionally protected speech. To the further extent that plaintiff attempts to glom the Guardian's speech under a third-party analysis, that allegation also fails because, for the reasons set forth below (*see* sec. III(B)(2)), *infra*, he lacks standing to do so. Furthermore, any such

11

claim should also be dismissed as duplicative of the freedom of speech/freedom of press claim. *See Birmingham v. Ogden*, 70 F.Supp. 2d 353, 368 (S.D.N.Y. 1999).) For that reason alone, plaintiff alleged that his father's relationship as an acquaintance of Zherka provides the requisite association to support his associational rights claim. (*See* Complaint, ¶ 3.) It is clear from the Complaint that plaintiff's father is not an employee of the Guardian or a contributing author to the Guardian on matters of public concern. Thus, plaintiff's claim of association with Zherka and the Guardian, through his father, is too attenuated to present this Court with a cognizable claim based on an alleged violation of an associational right. (Plaintiff's allegation that his father "actively supported" Zherka and the Guardian's speech against the Mayor (*see* Complaint, ¶ 3.) is vague and conclusory and, as such, fails to save his Complaint from dismissal.) Against such premises, the First Amendment does not protect the associational relationship on which the compliant is based. The first claim for relief should be dismissed.

### (2)   **Freedom of Speech/Freedom of Press**

Plaintiff's freedom of speech/freedom of press claim is fatally flawed because he does not have third-party standing to bring the claim on behalf of the Guardian and Zherka.

To assert third-party standing, plaintiff must demonstrate: (1) injury; (2) a close relationship between the plaintiff and the third-party that would cause plaintiff to be an effective advocate for the third party's rights; and (3) some hindrance to the third party's ability to protect his or her own interests. *See Camacho v. Brandon*, 317 F.3d 155, 159 (2d Cir. 2003). Even assuming plaintiff can satisfy the first prong of the third-party standing test, plaintiff's claim fails because he has not adequately alleged the second and third prongs.

With regard to the second prong of the third-party standing test, the Complaint purports to assert standing on behalf of the Guardian and Zherka. However, the Complaint alleges a relationship with Zherka and the Guardian through his relationship with his father. Such an

12

attenuated and indirect relationship fails to support the notion that third-party standing is appropriate in this case. It is also clear that plaintiff should not be afforded third-party standing because, as the Article 75 proceeding reveals, the disciplinary issues that form the basis of the Article 75 hearing predominate this case. In sum, plaintiff lacks third-party standing because there is no commonality of interest between him and the Guardian or Zherka.

In any case, the alleged constitutional right presented by the Complaint is the City's actions with respect to the distribution boxes and the confiscation of the Guardian newspapers. Zherka's and the Guardian's rights in that regard are (and were) protected by their own lawsuit against the defendants and the ten other complaints on the Southern District docket relating to the same constitutional issues and involving the same set of facts and circumstances. (*See* Buford Dec., ¶¶ 7-8; Exhs. D-F.) Plainly, Zherka and the Guardian and the plaintiffs in the ten related cases are (and were) better positioned than plaintiff to advocate for Zherka's and the Guardian's constitutional rights. Moreover, it should be noted that the Guardian and Zherka prevailed on the Zherka complaint and the Zherka court issued a permanent injunction against the City.

Turning to the third prong of the third-party standing test, Zherka and the Guardian can protect their own constitutional rights and, indeed, have already done so. Interestingly, Zherka and the Guardian, in their own lawsuit against the defendants, withdrew their claims for compensatory and punitive damages against the defendants *with* prejudice. (Buford Dec., ¶ 7; Exhs. E.) This case is solely about monetary relief, and plaintiff should not be permitted to collect monies by piggy-backing on claims that Zherka and the Guardian voluntarily waived when suing in their own right. (*See* Buford Dec., Exh. E.)   As such, plaintiff should be foreclosed from pursuing relief on the basis of third-party standing when the same relief was

13

raised and waived by the Guardian and Zherka. *See Uzdavines v. Week Marine, Inc.*, 418 F.3d 138, 146 (2d Cir. 2005) ("where the parties intend a stipulation to be binding on future litigations, issues to which the parties have stipulated will be considered 'actually litigated' for collateral estoppel purposes."); *see also Samuels v. N. Telecom, Inc.*, 942 F.2d 834 (2d Cir. 1991) ("a stipulation dismissing an action with prejudice can have the preclusive effect of *res judicata*").

The Complaint also alleges that Zherka and others were unconstitutionally arrested. This claim was also raised in the Zherka complaint. In its March 2, 2008 memorandum and order, the Zherka court dismissed all pending charges against Zherka and the Guardian's employees or agents. Still, Zherka may have potential claims for relief arising out of the issuance of desk appearance tickets or summonses. Plainly, Zherka and the Guardian may vindicate their respective constitutional rights on their own.

Accordingly, the second claim for relief should be dismissed.

### (3)    The Due Process Violation

With regard to the alleged due process violation, that claim for relief underscores the fact that the Complaint was filed to challenge the Article 75 proceeding, and nothing more.

As the record of the administrative proceeding reflects, plaintiff challenges the Article 75 scheme as a sham. During his opening remarks, plaintiff's counsel threatened to bring a federal civil rights action against the City, telling the hearing officer that "[t]his case is not going to be resolved in this forum" and, having presented in his response to the Charge a reservation of right under *England v. Louisiana Bd. Of Med. Examiners*, 375 U.S. 411 (1964), "the issues that I've raised subject to the *England* reservation are going to get tried in the U.S. District Court in White Plains[,] not here so we can complete the hearing whenever you want." (Buford Dec., ¶ 5; Exh. C, pp. 34-36.) It is noted, however, that plaintiff's *England*-reservation was of no force and

14

effect since he did not first pursue his constitutional claim in federal court before the commencement of the Article 75 proceeding. *See Hickerson v. City of New York*, 146 F.3d 99, 110-11 (2d Cir. 1998) (*citations omitted*). Thus, the *England*-reservation was nothing more than a ruse designed to mislead the hearing officer into believing that plaintiff had constitutional claims that were ripe for federal court litigation.

With further regard to plaintiff's counsel's remark concerning the forum in which the matter may be resolved, plaintiff's counsel presumed that if the hearing officer ruled in plaintiff's favor that the City would overrule that decision. (Buford Dec., ¶ 5; Exh. C; pp. 34-36.) The presumption that the deck was stacked against plaintiff overlooks the fact that under the Article 75 scheme, plaintiff's judicial remedy lies with the New York State Supreme Court in the form of a motion under Article 78 of the Civil Practice Law and Rules or an appeal to the Yonkers Civil Service Commission. *See* N.Y. CIVIL SERVICE LAW § 76(1). As such, there are appropriate "checks and balances" to ensure that any decision in the Article 75 proceeding is not arbitrary and capricious and comports with the evidence presented.

By preferring the Charge and invoking the Article 75 scheme established by the Legislature, the City was acting as a government employer and fulfilled its required obligations by providing notice and the opportunity to be heard. In this extant, plaintiff should not be permitted to "make a federal case" out of a simple disciplinary hearing. Because the Article 75 proceeding is ongoing and plaintiff's claims are subject to Article 78 review, plaintiff's due process constitutional claim fails as a matter of law. *See DeMasi v. Benefico*, ___ F. Supp. 3d ___, No. 07 Civ. 8049 (WCC), 2008 WL 2884903 at *4 (S.D.N.Y. June 13, 2008) (pointing out that with respect to claims based on random unauthorized acts by state employees, due process is not offended where some adequate post-termination remedy is available) citing *Hellenic Am.*

15

*Neighborhood Action Comm. V. City of New York*, 101 F.3d 877, 880-881 (2d Cir. 1996). Accordingly, plaintiff fails to assert a cognizable due process claim and the third claim for relief should be dismissed.

**(C)    THE DECISION TO DISCIPLINE PLAINTIFF WAS OBJECTIVELY REASONABLE**

Even if the Court finds that a constitutional right is stated in the Complaint (which it should not), the individual defendants are entitled to qualified immunity because the decision to discipline plaintiff, as evinced by the Charge, was objectively reasonable. *See Sheppard v. Beerman*, 94 F.3d 823, 827-28 (2d Cir. 1996).

A government official's actions are considered objectively unreasonable "when no officer of reasonable competence could have made the same choice in similar circumstances." *Lennon v. Miller*, 66 F.3d 416, 420-21 (2d Cir. 1995). In this regard, conduct that is objectively reasonable is not converted into a constitutional claim based solely on a mere allegation of an unconstitutional motive. *See Mascetta v. Miranda*, 957 F. Supp. 1346, 1354 (S.D.N.Y. 1997). Here, it was objectively reasonable for Simpson to believe that he could subject plaintiff to disciplinary charges without violating his constitutional rights due to Agostino's performance deficiencies. In doing so, Simpson acted appropriately and within the proper procedures by invoking Article 75, ensuring that plaintiff received notice of the proceeding and the opportunity to be heard, and relegating any final determination to a neutral arbiter. As reflected in the Charge, the City preferred three charges against plaintiff reflecting eleven different instances of untimely or unsatisfactory performance, tardiness, absenteeism or insubordination. (*See* Buford Dec., Exh. B.)

On the face of the Complaint, Plaintiff's vague and conclusory claim is devoid of any factual allegations sufficient to permit an inference that Simpson had an unconstitutional motive in preferring the Charge. Indeed, Santo Agostino's specious relationship with the Guardian and

16

Zherka can not and should not be used by plaintiff as a shield to protect him for suspension or discharge by the City.  Furthermore, given the protections set forth under Article 75 that allow for a review of the City's determination, any retaliatory motive is belied by the invocation of the Article 75 scheme.  Accordingly, his claim is speculative and implausible on its face; the individual defendants should be dismissed from the case.

IV.

### THE FREEDOM OF SPEECH/FREEDOM OF THE PRESS CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF LACKS STANDING TO PURSUE THE CLAIM

Generally, a litigant must assert its own legal rights and may not glom the legal rights of others. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975).  Courts do, however, permit litigants to assert third-party standing on behalf of another under certain circumstances.  However, as set forth at sec. III(B)(2), *supra*, pp. 12-14, plaintiff lacks standing, as a third-party or otherwise, to assert a freedom of speech and/or freedom of press claim.  As such, the second claim for relief should be dismissed.

(To the extent that plaintiff's freedom of speech/freedom of press claim relates to the hearing officer's off-the-record use of the "f-word" prior to the start of the Article 75 proceeding, such a remark does not offend the First Amendment or give rise to a First Amendment claim.)

## V.

### TO THE EXTENT THAT THE COURT PERCEIVES A CONSTITUTIONAL VIOLATION UNDER ANY OF THE CLAIMS ASSERTED BY PLAINTIFF, IT SHOULD, NONETHELESS, STAY THIS ACTION PENDING THE RESOLUTION OF THE ARTICLE 75 PROCEEDING

Even if the Court determines that plaintiff has adequately set forth one or more plausible constitutional claims for relief (and plaintiff has not done so), it should stay this action because the Article 75 proceeding is ongoing and plaintiff has a legal remedy in connection with the administrative proceeding.

Although it is now settled in the Second Circuit that the abstention doctrine under *Younger v. Harris*, 401 U.S. 37 (1971) and its progeny does not apply to claims for money damages, *see Rivers v. McLeod*, 252 F.3d 99 (2d Cir. 2001); *Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000), this case should be stayed pending the completion of the Article 75 proceeding because plaintiff has a complete and adequate remedy in the Article 75 proceeding and its review procedures. A stay is appropriate for several reasons.

First, since the factual issues raised in this suit rise and fall on the determinations that have yet to be made in the Article 75 proceeding, it is premature for this Court to entertain this case. Importantly, for example, whether the Article 75 proceeding has merit will be a critical consideration in this case. In fact, plaintiff's counsel acknowledged that the Article 75 proceeding (which plaintiff's counsel branded as "a kangaroo court" where the outcome is pre-determined) and any federal court action were intertwined. Plaintiff's counsel told the hearing officer that neither he nor Amicone will decide the case because the issues may only be decided by the "U.S. District Court in White Plains." Stated otherwise, plaintiff's counsel acknowledged that the same facts, issues, and witnesses will be before the hearing officer in the Article 75 proceeding and in any federal court case.

18

Second, any award of back pay in the Article 75 proceeding will make plaintiff whole, effectively ending any claim for damages that he might have in the federal court case. *See* N.Y. Civil Service Law § 77; *Mauro v. Village of Freeport*, 143 A.D.2d 75, 76 (2d Dep't 1988) (pointing out that the relief available under Article 75 includes reinstatement and back pay). Third, the City has important governmental interests in exercising its discretionary powers to discipline poorly performing employees under the statutory scheme set up by the Legislature. As such, the City must have the latitude as an employer to manage its personnel issues without fear that its employees who read the Guardian or have a relationship with Zherka will subject them to constitutional claims. Any other result will be tantamount to giving away the keys to the courthouse. Finally, the Article 75 proceeding will streamline the discovery process in the federal court case by creating an adequate record with respect to the City's reasonable, good-faith belief that plaintiff's employment record warranted discipline. (And, in that respect, it is noted that if this Court hears this case, the findings of the hearing officer are of preclusive effect. *See Burkybile v. Bd. Of Educ. of the Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 311-12 (2d Cir. 2005).)

Accordingly, the interests of comity, deference to state administrative proceedings and judicial economy militates in favor of this Court staying this case until the Article 75 proceeding is completed and plaintiff's defenses are rejected.

## CONCLUSION

For the reasons set forth above, and in the accompanying Declaration of Darryll A. Buford, dated August 21, 2008, defendants David Simpson, William Regan, Philip Amicone and the City of Yonkers respectfully request that this Court grant their motion to dismiss the Complaint in its entirety. If the Court determines that the Complaint alleges a constitutional violation, Simpson, Regan and Amicone respectfully request that the case be dismissed as to each of them on the grounds of qualified immunity and on such other grounds as the Court deems just and appropriate.

Dated: August 21, 2008

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By:     s/ Darryll A. Buford
        Darryll A. Buford (DB-0546)
        100 Park Avenue, 15th Floor
        New York, New York 10017
        212.878.7900

*Counsel for David Simpson, William Regan, Philip Amicone and The City of Yonkers, New York*

On The Brief
 Samantha H. Evans, Esq.