UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
VINCENT AGOSTINO,

                                        Plaintiff,

                - against -

DAVID SIMPSON, individually, WILLIAM REGAN,
individually, PHILIP AMICONE, individually, and the
CITY OF YONKERS, New York,

                                        Defendants.
------------------------------------------------------------------------x



08-CV-5760 (CS)

**MEMORANDUM DECISION
AND ORDER**

Appearances:

Jonathan Lovett, Esq.
Lovett & Gould
White Plains, New York
*Counsel for Plaintiff*

Darryll A. Buford, Esq.
Samantha H. Evans, Esq.
Fox Rothschild, LLP
New York, New York
*Counsel for Defendants*

Seibel, J.

        Before this Court is Defendants' Motion to Dismiss (Doc. 11) pursuant to Fed. R. Civ. P.

12(b)(6), which was filed on August 21, 2008.  Plaintiff's opposition papers (Doc. 16), along

with the First Amended Complaint (Doc. 17), were filed on September 11, 2008.[1]  Defendants

filed a reply memorandum (Doc. 19) on September 19, 2008, in which they urge the Court to

dismiss the First Amended Complaint on the ground that it suffers from the same infirmities as

---

        [1]Pursuant to Fed. R. Civ. P. 15(a)(1)(A), Plaintiff is entitled to "amend its pleading once
as a matter of course . . . before being served with a responsive pleading."  Therefore, for
purposes of the present Motion, the Court will consider whether the First Amended Complaint
states a claim.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____22_____
DATE FILED: 10·17·08

the original Complaint. The Court held oral argument on October 21, 2008. For the reasons stated below, Defendants' Motion is denied in part and granted in part.

## I. Background

On June 26, 2008, Plaintiff Vincent Agostino filed this action against Defendants David Simpson, William Regan, Philip Amicone (collectively, "Individual Defendants"), and the City of Yonkers ("City") (collectively, "Defendants"), alleging a cause of action under 42 U.S.C. § 1983 ("Section 1983") for violations of Plaintiff's First and Fourteenth Amendment rights. At all times relevant to this action, Defendant Amicone was the Mayor of the City of Yonkers, Defendant Simpson was the City's Director of Communications, and Defendant Regan was the Deputy Mayor of the City.

For purposes of the present Motion, the Court accepts as true the facts as stated in Plaintiff's First Amended Complaint. Plaintiff is employed by the City on a tenured, civil service basis as a "Senior Video Technician." Plaintiff's employment, therefore, cannot be terminated without a pre-deprivation due process hearing, to which he has a right under Section 75 of New York State Civil Service Law ("Section 75").[2]

Plaintiff's father, Santo Agostino ("Santo"), was not employed by Defendant City, but on or around July 2007, Santo allegedly became known to the Individual Defendants as a close friend and supporter of Selim Zherka, the owner and publisher of *The Westchester Guardian* (hereinafter, the "*Guardian*"). In July 2007, the *Guardian* began publishing articles critical of

_____

[2]Section 75, in pertinent part, provides: "A person [described in this Section] shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section."

The First Amended Complaint alleges – and Defendants do not dispute – that Plaintiff's employment with the City is covered by Section 75.

2

Defendant Amicone, who was running for re-election as Mayor of the City at the time, and his administration.  As a result of these publications, Defendants Simpson, Amicone, and Regan, among others, allegedly galvanized the Yonkers Police Department to begin violating Zherka's First Amendment rights by confiscating the *Guardian* from newsracks and by criminally charging Zherka with violating an unconstitutional City Code provision.  Santo began to advocate for Amicone's defeat in the upcoming mayoral election and to republish Zherka's negative opinions of Amicone and his administration as his own.

Allegedly in retaliation for the activities of Santo, Defendants served Plaintiff with civil service disciplinary charges pursuant to Section 75 in January 2008.  Plaintiff was suspended without pay for thirty days, which is the maximum allowable suspension without pay under Section 75.  Plaintiff was restored to the payroll until his Section 75 disciplinary proceeding, which was attended by Santo, Zherka, and other representatives of the *Guardian*.  The hearing officer said that he did not want the media present for the hearing, but Zherka and others ultimately attended.  Shortly after the hearing commenced, Defendants Simpson, Amicone, and Regan allegedly agreed to retaliate against Plaintiff by again removing him from the City payroll, this time indefinitely, effectively terminating his employment.  Plaintiff alleges that this adverse employment action was taken in retaliation for Zherka's, Santo's, and the *Guardian*'s criticism of Amicone and his administration.

Plaintiff asserts causes of action based on Defendants' alleged violation of:  (1) Plaintiff's right of intimate association; (2) Santo's right to free speech on a third-party standing basis; (3) Plaintiff's right not to be chilled in the future exercise of his rights to free speech and/or to

petition the government for redress of grievances; and (4) Plaintiff's right to a pre-deprivation due process hearing before being deprived of his property rights.

## III. Discussion

### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

#### 1. Standard of Review

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must "accept[] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (internal quotation marks omitted). In order to withstand dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (disavowing the oft-quoted statement from *Conley v. Gibson*, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965 (internal quotation marks omitted). Thus, "at a bare minimum, the operative standard requires the 'plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level.'" *Goldstein v. Pataki*, 516 F.3d 50, 56-57 (2d Cir. 2008) (quoting *Twombly*, 127 S. Ct. at 1974).

4

## 2. Documents Properly Considered on a Motion to Dismiss

When deciding a motion to dismiss, the court's "review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *accord Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). "When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (internal quotation marks omitted).[3]

There are, however, circumstances under which it is appropriate for a court to consider documents outside of the complaint on a motion to dismiss. For example, documents that are "integral" to the complaint, are partially quoted in the complaint, or were relied upon by plaintiff in drafting the complaint may be properly considered on a motion to dismiss. *See Faulkner*, 463 F.3d at 134. The court may also consider on a motion to dismiss documents of which it may take judicial notice. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 771 (2d Cir. 1991).

---

[3]Because there has been no discovery in this case to date, the Court declines to convert the Motion to one for summary judgment. *See Watts v. Jackson Hewitt Tax Serv., Inc.*, No. 06-CV-6042, 2008 WL 3852166, at *5 (E.D.N.Y. Aug. 16, 2008) (declining to convert motion to dismiss to motion for summary judgment because "without access to additional discovery, the plaintiffs lack sufficient notice to allow them to contest the defendants' disclosures properly"); *Pearce v. Manhattan Ensemble Theater, Inc.*, 528 F. Supp. 2d 175, 179 n.3 (S.D.N.Y. 2007) (noting "[c]onversion to summary judgment would . . . be inappropriate because discovery has not yet occurred").

## B. Documents Proffered by Defendants

Defendants proffer, as an exhibit to their reply papers, what they identify as an excerpt

from the transcript of Plaintiff's Section 75 hearing. According to Defendants, the transcript

establishes that Plaintiff was removed from the City payroll due to an administrative "glitch,"

and not due to retaliatory animus, and that Plaintiff was fully compensated by the City for the

mistake. Specifically, Defendants point to the following statement made by the City's attorney

during the hearing:

> Mr. Rosenberg: . . . Mr. Lovett did notify me probably a month and
> a half ago or so that Mr. Agostino had been taken off the payroll
> again and I made inquiries into the department personnel about that
> inquiry and it's turned out that we have determined that there was
> some administrat[ive] glitch which occurred and for some reason
> he was taken off, I don't know why. There is going to be a
> retroactive check provided to Mr. Agostino putting him back on
> the payroll effective the day that he had been taken off and that's
> going to be occurring today hopefully.

(Decl. of Darryll A. Buford ("Buford Decl."), Ex. G at 574-75.) For purposes of the present

Motion, however, it is improper for the Court to consider this transcript for the purpose that

Defendants have proffered it – namely, as evidence that Plaintiff was not improperly removed

from the payroll. While Plaintiff briefly refers in the First Amended Complaint to comments

made by the hearing officer and by Defendants' counsel during the Section 75 hearing (First Am.

Compl. ("FAC") ¶¶ 9(a)-(b)), these limited references do not justify this Court incorporating the

rest of the transcript into the First Amended Complaint. *See Sira v. Morton*, 380 F.3d 57, 67-68

(2d Cir. 2004) (district court was required to convert motion to one for summary judgment in

order to consider hearing transcript because the transcript was not cited in the complaint or

integral to the claims asserted therein, even though complaint did contain one quote from the

6

transcript); *see also id.* at 67 ("Limited quotation or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint.").

Further, even if the Court could take judicial notice of the transcript, it could not consider it for the truth of the matters asserted therein – which is the purpose for which Defendants have proffered it. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (even where transcript of testimony in prior proceeding is public record of which court may take judicial notice, court "may do so on a motion to dismiss only to establish the existence of the [document], not for the truth of the facts asserted in the [document]" (internal citations omitted)). Therefore, the Court will not consider the transcript as proof that – contrary to Plaintiff's allegations, which the Court must accept as true – Plaintiff was removed from the City payroll due to an inadvertent glitch, for which he was reimbursed.

### C. Analysis

#### 1. Section 1983

Section 1983 provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States . . . to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity,
> or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To successfully assert a Section 1983 claim, a plaintiff must demonstrate: "(1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity

7

secured by the Constitution or laws of the United States." *Mitchell v. Dep't of Corr.*, No.

05-CV-5792, 2008 WL 744041, at *9 (S.D.N.Y. Feb. 20, 2008) (internal quotation marks

omitted).

### 2. Defendants' Motion

Defendants move to dismiss the First Amended Complaint on the following grounds: (1)

Plaintiff failed to allege the personal involvement of the Individual Defendants in the alleged

deprivation of Plaintiff's rights; (2) the Individual Defendants are entitled to qualified immunity;

and (3) Plaintiff fails to allege cognizable due process, free speech, and intimate association

claims. Defendants also argue that if this action survives the Motion to Dismiss, it should be

stayed until the resolution of Plaintiff's Section 75 disciplinary proceeding.

### a. Personal Involvement of the Individual Defendants

The Individual Defendants argue that Plaintiff has failed to allege their personal

involvement in the alleged deprivation of his constitutional rights. It is well settled that a

defendant's personal involvement in an alleged constitutional deprivation is "a prerequisite to an

award of damages under § 1983." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d

107, 122 (2d Cir. 2004) (internal quotation marks omitted). A plaintiff can demonstrate personal

involvement in any of the following ways:

> (1) the defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation
> through a report or appeal, failed to remedy the wrong, (3) the
> defendant created a policy or custom under which unconstitutional
> practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the
> defendant exhibited deliberate indifference . . . by failing to act on
> information indicating that unconstitutional acts were occurring.

8

*Id.* at 127 (internal quotation marks omitted). "[A] tangible connection between the acts of a defendant and the injuries suffered" must be alleged by a plaintiff asserting a Section 1983 claim. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

In the First Amended Complaint, Plaintiff alleges that the retaliatory conduct described was carried out by the Individual Defendants (FAC ¶ 4), that the Individual Defendants jointly caused Plaintiff to be served with pretextual disciplinary charges (*id.* ¶ 8), that the Individual Defendants removed Plaintiff from the payroll indefinitely without notice or the opportunity to be heard (*id.* ¶ 10), and that the Individual Defendants took adverse action against Plaintiff in retaliation for his father's First Amendment activities (*id.* ¶ 11). These are the precise actions that Plaintiff claims violated his constitutional rights, and Plaintiff claims that the Individual Defendants named in this lawsuit are the precise individuals who, acting in concert, carried out the complained-of conduct. Therefore, indulging all inferences in Plaintiff's favor, the Court finds that Plaintiff has adequately alleged that the Individual Defendants participated directly in the constitutional violations alleged. The Court notes, however, that to survive summary judgment or to prevail at trial, Plaintiff must come forward with evidence establishing the actual involvement of each of these individuals in each of the violations for which Plaintiff seeks to hold them responsible.

### b. Constitutional Claims

#### i. Freedom of Speech

Plaintiff asserts two causes of action premised on Defendants' alleged violation of First Amendment rights. First, Plaintiff brings a cause of action, on a third-party standing basis, alleging that Defendants took adverse action against Plaintiff in retaliation for Santo's First

9

Amendment activities. (*Id.* ¶ 16.) Second, Plaintiff brings a cause of action claiming that his own First Amendment rights were violated when Defendants' retaliatory conduct caused Plaintiff's "future exercise of his rights to free speech and/or to petition the government for the redress of grievances" to be chilled. (*Id.* ¶ 18.)

(A) <u>Third Party Claim</u>. Because Plaintiff has attempted to assert a cause of action based on Defendants' alleged violation of Santo's First Amendment rights, the Court must first determine whether Plaintiff has standing to assert these rights on a third-party basis. If so, the second question for the Court is whether Plaintiff has adequately alleged a violation of Santo's First Amendment rights. *See Camacho v. Brandon*, 317 F.3d 153, 159-61 (2d Cir. 2003) (determining first whether plaintiff had third-party standing and then whether plaintiff had established violation of third-party's First Amendment rights).

In order to assert the constitutional claims of a third party, a plaintiff must demonstrate: "(1) injury to the plaintiff, (2) a close relationship between the plaintiff and the third party that would cause plaintiff to be an effective advocate for the third party's rights, and (3) 'some hindrance to the third party's ability to protect his or her own interests.'" *Id.* at 159 (quoting *Campbell v. Louisiana*, 523 U.S. 392, 397 (1998)); *accord Powers v. Ohio*, 499 U.S. 400, 410-11 (1991). Though third-party standing is generally disfavored, the Supreme Court has been "quite forgiving with these criteria in certain circumstances," such as "[w]ithin the context of the First Amendment." *Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004) (internal quotation marks omitted).

The Court finds that, taking all of Plaintiff's allegations as true, Plaintiff has third-party standing to assert a claim based on violations of Santo's First Amendment rights. With respect

to the first element, Plaintiff has alleged an injury-in-fact: that he was removed from the City payroll and subjected to a pretextual disciplinary hearing.

The second element – a close relationship – raises an interesting question in light of Plaintiff's allegations. On one hand, the close relationship seems to be a given, as Plaintiff and Santo are biologically father and son. *See Lewis v. Thompson*, 252 F.3d 567, 585 (2d Cir. 2001) ("As for prudential standing, the relationship between parent and child is obviously close."). However, in support of his intimate association claim, Plaintiff alleges that Defendants' conduct has "impair[ed] and strain[ed] . . . his relationship with his father." (FAC ¶ 12.) At oral argument, the Court raised this concern with Plaintiff's counsel, asking him how Plaintiff can allege that Defendants have impaired and strained his relationship with Santo, and at the same time urge this Court to find that Plaintiff and his father have a close enough relationship to justify a finding that Plaintiff would be an effective advocate for his father's First Amendment rights in this case. (Hr'g Tr. 22-23, Oct. 21, 2008.) Plaintiff's counsel argued to the Court that the biological relationship between Plaintiff and Santo, coupled with the fact that it was Plaintiff – and not Santo – who was injured by Defendants' alleged conduct, makes Plaintiff an effective advocate for Santo's rights here. (*Id.* at 23-24.) The Court agrees, at least at this stage. To establish third-party standing, "the more relevant considerations are whether the Constitutional right at issue 'is inextricably bound up with the activity the litigant wishes to pursue,' and whether the litigant will be 'fully, or very nearly, as effective a proponent' of the third party's rights as the third party would be." *Cicchetti v. Davis*, No. 07-CV-10546, 2008 WL 619013, at *5 (S.D.N.Y. Mar. 5, 2008) (quoting *Singleton v. Wulff*, 428 U.S. 106, 114-15 (1976)). If Plaintiff's allegations are true, Santo's First Amendment rights are bound up in Plaintiff's ability

11

to maintain employment with Defendants without being subjected to retaliatory discipline. Further, as a close relative and the person actually injured by Defendants alleged conduct, Plaintiff should be an effective advocate for Santo's First Amendment rights. Accordingly, the Court finds that the second element is met.

Finally, with regard to the third and final element, since there is no allegation that Santo suffered direct economic harm when Defendants allegedly retaliated against Plaintiff, Santo would lack incentive to bring a claim to protect his own rights. *See Camacho*, 317 F.3d at 159-60 (plaintiff city council employee had third-party standing to assert First Amendment rights of city councilman for whom he worked because plaintiff was fired as a result of councilman's vote, plaintiff and councilman had close working relationship, and councilman could not assert his own rights because he had suffered no injury-in-fact from his First Amendment activity); *Huth v. Haslun*, No. 07-CV-152, 2008 WL 904726, at *3-4 (S.D.N.Y. Apr. 3, 2008) (plaintiff had third-party standing to assert third-party's First Amendment rights where plaintiff was allegedly demoted based on the third-party's First Amendment activity, plaintiff and third-party were friends, and third party was not disciplined for her protected activity, so would not have had standing to sue on own behalf); *Cicchetti*, 2008 WL 619013, at *5 (plaintiff had third-party standing where allegedly fired for third-party's First Amendment activity, no reason to doubt that plaintiff would adequately advocate third-party's rights, and third-party did not suffer any direct injury as a result of defendant's conduct so could not have brought its own suit).

Having decided that Plaintiff has third-party standing to assert Santo's First Amendment rights, I must next determine whether Plaintiff has adequately alleged that Santo's First Amendment rights were actually violated.

12

The Court of Appeals has instructed that the elements of a First Amendment retaliation claim are dependent on the "factual context" of the case before the district court. *See Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008). For instance, a public employee who alleges First Amendment retaliation must allege the following: "(1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the adverse employment action." *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003) (internal quotation marks and citations omitted). A private citizen, on the other hand, must allege: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' action effectively chilled the exercise of his First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

Under usual circumstances, a public employee is not required to show that his or her speech was actually chilled due to the defendant's retaliatory conduct because, in the employment context, the public employee usually suffers an adverse employment action – above and beyond chilling – that would demonstrate injury. *See Morrison v. Johnson*, 429 F.3d 48, 51 (2d Cir. 2005) (public employee not required to allege actual chill in addition to adverse employment action); *Gill v. Pidlypchak*, 389 F.3d 379, 382 (2d Cir. 2004) ("[I]t is well-settled that public employees alleging retaliation for engaging in protected speech are not normally required to demonstrate a chill subsequent to the adverse action taken against them. . . . [T]he employee's essential burden is to show that he or she was punished, not that his or her speech was 'effectively chilled' from that point forward."). Instead, it is sufficient if the "retaliatory

13

conduct . . . would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004).

In contrast, where a private citizen claims First Amendment retaliation by a public official, the citizen is required to show that his or her speech was actually chilled; otherwise, the citizen would, in most instances, be unable to demonstrate any concrete harm. *See Curley*, 268 F.3d at 73 (actual chill required) (citing *Singer v. Fulton Co. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (no chilling effect where speech continued following arrest); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (same)). Because Plaintiff asserted a violation of a private citizen's (Santo's) rights, the Court considers whether Plaintiff has alleged the requisites for Defendants' violation of a private citizen's First Amendment rights.

With regard to the first element, Defendants argue that "the FAC allegations show that Santo was not exercising any free speech/free press rights." (Defendants' Reply Mem. of Law in Supp. of Their Mot. to Dismiss the Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) ("Defs.' Reply") 8.) *See Camacho*, 317 F.3d at 160 ("[Plaintiff's ] claim must succeed or fail based on whether [third-party's] activities enjoyed the protection of the First Amendment."). Plaintiff has alleged, however, that Santo "republished" as his own Zherka's and the *Guardian's* negative opinions about Defendant Amicone and his administration and that Santo advocated Amicone's defeat in the 2007 mayoral race. (FAC ¶ 3.) This alleged activity is clearly protected by the First Amendment. *See Burkybile v. Bd. of Educ.*, 411 F.3d 306, 313 (2d Cir. 2005) ("public accusations of improper governmental actions are clearly matters of public concern" and thus are constitutionally protected); *Velez v. Levy*, 401 F.3d 75, 97 (2d Cir. 2005) ("'speech critical of the

14

exercise of the State's power lies at the very center of the First Amendment'" (quoting *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1034 (1991))).

The second element – causation – is a closer call. "To establish a causal connection sufficient to survive a motion to dismiss, the 'allegations must be sufficient to support the inference that the speech played a substantial part in the adverse action.'" *Kempkes v. Downey*, No. 07-CV-1298, 2008 WL 852765, at *3 (S.D.N.Y. Mar. 31, 2008) (quoting *Davis v. Goord*, 320 F.3d 346, 354 (2d Cir. 2003)). A causal connection is often shown circumstantially, through allegations that the retaliation occurred in "close temporal proximity" to the protected activity. *See id.*; *Morey v. Somers Cent. Sch. Dist.*, No. 06-CV-1877, 2007 WL 867203, at *11 (S.D.N.Y. Mar. 21, 2007) (collecting cases). Here, Plaintiff claims that Defendants were aware of Santo's support for Zherka and the *Guardian* and of the fact that Santo was publishing negative opinions about Amicone and his administration starting around July 2007 (FAC ¶¶ 3), and that, in order to retaliate against and punish Plaintiff for his father's conduct, Defendants removed Plaintiff from the City payroll and served him with pretextual disciplinary charges in January 2008 (*id.* ¶¶ 8,10-12). Thus, the First Amended Complaint shows a six-month gap between when Defendants allegedly became aware of Santo's First Amendment activities and when Defendants allegedly took action against Plaintiff in retaliation for those activities. Though there is no bright line regarding temporal proximity, six months seems to be on the outer edge of that which is considered close enough to raise an inference of retaliatory motive. *See Burkybile*, 411 F.3d at 314 (stating that Second Circuit "has not established a specific delay between protected activity and adverse employment action that defeats an inference of causation," but noting that delay of three months has been found to be fatal to finding of causation, while finding of eight months has

15

been found to be sufficient to support inference of causation); *Morey*, 2007 WL 867203, at *11-12 (collecting cases). Because there is no bright line for temporal proximity and because six months could at least be in the range of acceptable time periods, the Court will not dismiss the claim on this ground at this early stage of the case. Further, a generous reading of the First Amended Complaint could suggest that the speech in question continued through the November 2007 election in which Defendant Amicone was a candidate, in which event the proximity between the speech and the alleged retaliation is even greater. Accordingly, dismissal at this stage is not appropriate.

The third element requires plaintiffs to prove that the retaliatory "official conduct actually deprived them of that right" by either silencing them or having some "actual, non-speculative chilling effect on [their] speech." *See Williams*, 535 F.3d at 78 (internal quotation marks omitted). The Court finds that Plaintiff has failed to sufficiently allege that Defendants' retaliatory conduct adversely affected Santo's constitutionally-protected expression. *See Camacho*, 317 F.3d at 163 n.11 ("[N]ot every action taken in retaliation against a plaintiff's constitutionally protected activities will necessarily adversely affect those activities."). There is no allegation that Defendants' retaliation against Plaintiff actually chilled or silenced Santo's speech. *See Gill*, 389 F.3d at 381 (actual chill is a requirement of a First Amendment claim involving private citizen's criticism of public officials); *Curley*, 268 F.3d at 73 (in context of private citizen criticizing public officials, plaintiff must show that protected speech was "actually chilled," i.e., that there was some change in plaintiff's behavior as a result of defendant's conduct). Though retaliation against Santo's son could have had an actual chilling effect on Santo's protected speech, *see Cicchetti*, 2008 WL 619013, at *5 ("There is an obvious possibility

16

of a chilling effect on free speech where, as alleged here, a public official retaliates against an associate of a speaker whose speech the official finds offensive."), Plaintiff has not alleged that to be the case here. Indeed, at oral argument Plaintiff's counsel was emphatic in his assertion that Plaintiff had not alleged a chilling of Santo's speech. (Hr'g Tr. 26 ("We don't allege that the father was chilled, it's the son who's been chilled.").) Because Plaintiff has not alleged that Santo's speech was silenced or chilled due to Defendants' conduct, Plaintiff has failed to allege a violation of Santo's First Amendment rights. *Cf. Camacho*, 317 F.3d at 163 (dismissing plaintiff's third-party First Amendment claim because third-party's speech was not entitled to First Amendment protection, which led to the court's conclusion that "Defendants, as a matter of law, are not liable for violating [the third party's] First Amendment rights"). Accordingly, Plaintiff's second cause of action, asserting a violation of Santo's First Amendment rights on a third-party basis, is dismissed.[4]

(B) First-Party Claim. At oral argument, Plaintiff's counsel explained the basis for Plaintiff's claim for the violation of his own First Amendment rights.[5] According to Plaintiff's counsel, Plaintiff's First Amendment rights were violated when he engaged in protected speech –

---

[4]Because Plaintiff made clear that he was not alleging that Santo's speech was in fact chilled, there would be no point in granting leave to amend the First Amended Complaint under Fed. R. Civ. P. 15(a).

[5]Plaintiff alleges in the First Amended Complaint only that Defendants' actions have "chilled Plaintiff in the future exercise of his rights to free speech and/or to petition government for the redress of grievances" (FAC ¶ 18), and that his right to speak out, if he wants to, "regarding the corruption rampant in the Amicone administration, the systemic police brutality that characterizes the City's Police Department, the waste of taxpayers['] money, and the padding of the City payroll by reason of 'no show' employees" has been violated due to the adverse consequences he has suffered because Santo exercised his First Amendment right to speak out on these topics (*id.* ¶ 12).

the filing of this lawsuit and his attorney insisting that the media be present for Plaintiff's Section 75 hearing – and, in retaliation for that protected speech, Defendants removed Plaintiff from the City payroll indefinitely.  (Hr'g Tr. 18-19.)[6]  Creative oral argument by counsel, however, does not defeat a motion to dismiss when the complaint does not even come close to alleging the theory Plaintiff's counsel articulates.  The First Amended Complaint does not allege that Plaintiff was retaliated against for any protected speech in which he himself engaged.  In fact, the First Amended Complaint says that Plaintiff's removal from payroll was done "to further retaliate against [Plaintiff] because of his father, Zherka, and [the *Guardian*]'s First Amendment protected activities."  (FAC ¶ 11.)  Because Plaintiff fails to allege that he was retaliated against for his own First Amendment activities, his First Amendment claim based on a future chilling of his free speech is insufficient for failure to satisfy the first element, which requires Plaintiff to allege that he engaged in "speech . . . as a citizen on matters of public concern rather than as an employee on matters of personal interest."  *Johnson*, 342 F.3d at 112.  Therefore, Defendants' Motion to Dismiss Plaintiff's third cause of action is also granted.[7]

### ii. Intimate Association

Plaintiff alleges that Defendants' retaliatory conduct "impair[ed] and strain[ed] . . . his relationship with his father, whose First Amendment activities have directly caused Plaintiff to lose financial benefits and put him a[t] risk of losing his employment."  (FAC ¶ 12.)  According

---

[6]Plaintiff's counsel stated that all adverse employment actions preceding the hearing were in retaliation for Santo's speech, and identified only the lawsuit and the assertion of the media's right to be present at the hearing as expressive activity of Plaintiff.  (Hr'g Tr. 18-19.)

[7]If Plaintiff wishes to amend the First Amended Complaint, he must, in a manner consistent with the Court's Individual Practices, seek leave of the Court through a motion to amend.

to Plaintiff, this retaliation was undertaken "for the purpose, actually realized, of intentionally
interfering with the intimate associational relationship between Plaintiff and his biological father,
Santo," thereby violating Plaintiff's right of intimate association under the First and Fourteenth
Amendments. (*Id.* ¶¶ 4, 14.)

"The Constitution in at least some circumstances protects familial relationships from
unwarranted government interference. This protection derives, in part, from a broader
constitutional right to association." *Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002). Certain
relationships, such as those between a parent and child, siblings, and husband and wife, have
been afforded "the greatest degree of protection because they are among the most intimate of
relationships." *Id.* at 136. The Supreme Court has recognized two forms of the right of intimate
association: (1) the right to "to enter into and maintain certain intimate human relationships"
without "undue intrusion by the State," (intimate association); and (2) the "right to associate for
the purpose of engaging in those activities protected by the First Amendment – speech, assembly,
petition for the redress of grievances, and the exercise of religion," (expressive association).
*Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984). Defendants read the First Amended
Complaint as asserting a claim based on the first form, a reading that the Court finds reasonable
given Plaintiff's allegations that Defendants' conduct was undertaken for the purpose of
interfering with Plaintiff's relationship with his father.

Plaintiff asserts this right under the First and Fourteenth Amendments, as it is unclear
from which Amendment the right is derived. *See Adler v. Pataki*, 185 F.3d 35, 42 (2d. Cir. 1999)
("The source of the intimate association right has not been authoritatively determined."). Where
a plaintiff is allegedly retaliated against for the First Amendment activities of a family member

19

and asserts a claim based on intimate association, the courts in this Circuit have considered the claim as deriving from the First Amendment. *See id.* at 44 ("[A] spouse's claim that adverse action was taken solely against the spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right of intimate association."); *Sutton v. Vill. of Valley Stream*, 96 F. Supp. 2d 189, 192-93 (E.D.N.Y. 2000) (analyzing intimate association claim premised on alleged retaliation against son for father's political activity as an alleged First Amendment violation). Therefore, in this case, the Court determines whether Plaintiff has adequately alleged a violation of his right to intimate association with his father under the First Amendment.

The relationship between Plaintiff and his biological father, Santo, is of the type accorded protection under the Constitution. *See Patel*, 305 F.3d at 136 (finding father/adult son relationship worthy of constitutional protection, and assuming that relationship to be of "such an intimate nature as to warrant the highest level of constitutional protection," regardless of fact that son did not live with father).

Though not entirely clear, there is some support for the proposition that a cognizable intimate association claim based on the relationship between a parent and an adult child who does not live with the parent must allege that the state interference with the relationship was intentional.[8] *See Patel*, 305 F.3d at 137 (Second Circuit "has never held that a challenged action

---

[8]In *Adler*, the Second Circuit pointed out that the "nature and extent of" the right to intimate association is hardly clear." 185 F.3d at 42. The court went on to explain that "[s]ometimes court opinions suggest that an intimate association right is not violated unless the challenged action has the likely effect of ending the protected relationship, or unless affecting the relationship was the purpose of the challenged regulation. In other cases, the opinions consider whether the challenged action alleged to burden an intimate association is arbitrary or an undue intrusion by the state into the . . . relationship." *Id.* at 43 (internal quotation marks and citations

20

must be directed at a protected relationship for it to infringe on the right to intimate association,"

but nonetheless finding that plaintiff "has alleged facts sufficient to prove that the [defendants']

conduct *was* intentionally directed at his family" (emphasis in original)); *Laureano v. Goord*, No.

06-CV-7845, 2007 WL 2826649, at *10 (S.D.N.Y. Aug. 31, 2007) (magistrate report noting that

"[w]hether a parent . . . of an adult child can recover . . . when the state action in question was

not intended to interfere with the family relationship is a question of first impression in this

circuit," and recommending that intentional interference is required for recovery), *adopted by*

2007 WL 2852770 (S.D.N.Y. Sept. 28, 2007). Here, in any event, Plaintiff has alleged that

Defendants acted for the purpose of intentionally interfering with the family relationship, which

is sufficient at this stage.[9]

Defendants argue, however, that Plaintiff's intimate association claim must be dismissed

because Plaintiff has failed to allege how Defendants' conduct has interfered with Plaintiff's

relationship with his father. (Defs.' Reply 9.) In support of their argument that such an

allegation is required in order to state a claim, Defendants cite *Jenkins v. Tyler*, 167 F. Supp. 2d

652 (S.D.N.Y. 2001), and *Sacay v. Research Foundation of the City University of New York*, 193

F. Supp. 2d 611 (E.D.N.Y. 2002). In *Jenkins*, plaintiff was terminated from his position as

Interim Director of a board of directors after it was determined that he had a conflict of interest

due to his mother's position in the company and her influence over his election. *See* 167 F.

Supp. 2d at 654. In dismissing plaintiff's freedom of association claim, the court found that

omitted ).

[9]If summary judgment is later sought on this claim, the Court will address whether
Plaintiff has adduced evidence sufficient to create an issue of fact on the issue of Defendants'
intent and whether such intent must be proven.

plaintiff failed to "plead facts indicating how [defendant] interfered with his mother-son relationship" and that "[t]here [wa]s no indication . . . that the intent or effect of [defendant's] action was to 'penalize' his mother-son relationship." *Id.* at 655. The court also pointed out that there was a nexus between the mother-son relationship and plaintiff's inability to effectively perform his job without the appearance of impropriety. In contrast, Plaintiff here alleges not only that Defendants' retaliation impaired his relationship with his father (FAC ¶ 12), but also that interfering with his relationship with his father was the purpose and aim of Defendants' conduct (*id.* ¶ 4). Further, there is no indication of any nexus between Plaintiff's ability to perform his job and the First Amendment activities of his father, which allegedly prompted the retaliation.

Defendants also rely on the *Sacay* case, in which the court dismissed – on summary judgment – plaintiff's association claim on qualified immunity grounds. The court noted plaintiff's failure "to present any evidence that her transfer and demotion burdened her relationship with her mother," but indicated uncertainty as to whether the Second Circuit's *Adler* decision even requires such a showing. *See* 193 F. Supp. 2d at 635 ("Even if *Adler* does not require that a plaintiff show any actual burden on the relationship . . . ."). This procedurally distinct case does little to help Defendants at this point in the case. Even if Plaintiff was required to come forward with evidence that Defendants' retaliation actually burdened his relationship with his father, he certainly need not come forward with such evidence to survive a motion to dismiss.

Defendants cite no authority supporting their argument that where a defendant's conduct was allegedly undertaken for the very purpose of harming or impairing an intimate relationship, said defendant's efforts must be alleged to have been successful in order for a plaintiff to state a

22

claim. In fact, the cases reviewed by the Court seem to suggest the opposite. *See, e.g.*, *Adler*, 185 F.3d at 45 ("If simple vindictiveness against the plaintiff on account of his wife's lawsuit was the defendants' true motive, a First Amendment violation would be established."); *Sutton*, 96 F. Supp. 2d at 193 ("If . . . it is proven that 'simple vindictiveness' was defendants' true motive, the First Amendment will have been violated."). In any event, taking Plaintiff's allegations as true, Defendants undertook retaliatory action against Plaintiff for the purpose of interfering with his relationship with his father because of his father's First Amendment activities (FAC ¶ 4), and as a result of this retaliation, Plaintiff's relationship with his father has been impaired due to the negative consequences Plaintiff claims to have suffered due to his father's First Amendment activities. Thus Plaintiff has alleged both that Defendants acted intentionally and that their intent to interfere was achieved. Accordingly, for purposes of the present Motion, Plaintiff has adequately alleged a plausible violation of his right to intimate association.

### iii. Due Process

Plaintiff alleges that, in violation of his Fourteenth Amendment rights, Defendants deprived Plaintiff of his property rights without first providing him with a due process hearing. (FAC ¶ 20.) More particularly, Plaintiff alleges that Defendants removed Plaintiff from the City payroll indefinitely, in violation of his Section 75 property rights. (*Id.* ¶ 10.) Defendant urges the Court to dismiss Plaintiff's due process claim on the ground that Plaintiff was mistakenly removed from the payroll and has since been returned to the payroll and fully compensated for the mistake, and that Plaintiff has received notice and an opportunity to be heard on the disciplinary charges through the vehicle of the ongoing Section 75 hearing. (Defs.' Reply 11.)

The Fourteenth Amendment guarantees that a person may not be deprived of his or her

23

property without due process of law. U.S. Const. amend XIV, § 1. "When a governmental employee is found to have a 'property interest' in continuation of his or her employment, the Due Process Clause of the Fourteenth Amendment forbids discharge unless the employee is afforded a pre-termination hearing." *O'Neill v. City of Auburn*, 23 F.3d 685, 688 (2d Cir. 1994). The Second Circuit has recognized that Section 75 provides covered employees with a property interest in their employment, meaning that they cannot be terminated without notice and an opportunity to be heard. *See Ciambriello v. County of Nassau*, 292 F.3d 307, 313-14 (2d Cir. 2002). The Parties do not dispute that Plaintiff's employment was covered by Section 75.

The Court finds that Plaintiff has adequately alleged a violation of his due process right to a pre-termination hearing under Section 75 by alleging that Defendants removed him from the City payroll indefinitely, thereby effectively terminating his employment, with no notice or hearing. Defendants' claim that the removal was a mistake and that Plaintiff has been fully compensated – which Plaintiff denies (Plaintiff's Mem. of Law in Opp'n to Defendants' 12(b)(6) Mot. to Dismiss ("Pl.'s Mem.") 15-16; Hr'g Tr. 16) – raises factual issues that cannot be resolved on the present Motion. Instead, the Court accepts as true Plaintiff's allegation that he was indefinitely removed from the payroll in retaliation for his father's First Amendment activities. Defendants will be free to pursue their counter-argument with evidence on summary judgment or at trial.

### c. Qualified Immunity

The Individual Defendants move to dismiss the First Amended Complaint on the ground that they are entitled to qualified immunity because Plaintiff's allegations fail to implicate any constitutional rights and because the disciplinary action taken against Plaintiff was objectively

24

reasonable. The doctrine of qualified immunity "shields public officials" from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007) (internal quotation marks omitted); *accord Wilson v. Layne*, 526 U.S. 603, 614 (1999) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." (internal quotation marks omitted)). Because the Court has determined that Plaintiff has adequately alleged violations of his due process right to a pre-deprivation hearing under Section 75 and his First Amendment right to intimate association with his father, the issue is whether the Individual Defendants are entitled to qualified immunity on either of these claims.

"[U]sually, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted," *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (internal quotation marks omitted), but "[a] traditional qualified immunity defense may . . . be asserted on a Rule 12(b)(6) motion as long as the defense

is based on facts appearing on the face of the complaint," *id.* at 436.  In the latter circumstance, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.* at 436.  Indeed, "[a] party endeavoring to defeat a lawsuit by a motion to dismiss for failure to state a claim faces a higher burden than a party proceeding on a motion for summary judgment." *Id.* (internal quotation marks omitted).

Defendants do not argue that they are entitled to qualified immunity on the basis that the asserted claims fail to assert violations of clearly-established rights.  Instead, Defendants' argument focuses on the objective reasonableness of their actions with respect to Plaintiff. Defendants argue that their decision to serve Plaintiff with disciplinary charges was objectively reasonable because of the many infractions Plaintiff is charged with having committed.  (Defs.' Reply 5-6.)  Plaintiff responds that Defendants' allegedly improper subjective intent in carrying out the complained-of conduct precludes a finding that their actions were objectively reasonable. (Pl.'s Mem. 15-16.)

Defendants rely on *Mascetta v. Miranda*, 957 F. Supp. 1346 (S.D.N.Y. 1997), to support their claim that Plaintiff's "mere allegation" that Defendants had an improper – here, retaliatory – motive for serving him with disciplinary charges is insufficient to show that Defendants' conduct was not objectively reasonable. *See id.* at 1354 ("Conduct that is objectively reasonable is not converted into a constitutional violation by the mere allegation of an unconstitutional motive."). *Mascetta*, however, is procedurally distinct from the present case in that the defendants in *Mascetta* moved for summary judgment on qualified immunity grounds, arguing that plaintiff had failed to come forward with actual evidence of improper motive.  Here, Plaintiff has alleged

that the disciplinary charges were pretextual and that Plaintiff was removed from the City payroll and suffered a violation of his intimate association rights because of Defendants' subjective motive to retaliate against Plaintiff for his father's conduct.  Discovery has not taken place, so it is premature to assess whether Plaintiff will be able to adduce evidentiary support for these claims.

At this point in the case, the Court finds that Defendants have not demonstrated their entitlement to qualified immunity.  Faced with Plaintiff's allegations that Defendants purposefully violated Plaintiffs' concededly clearly-established rights (to a predeprivation hearing and to an intimate association with his father undisturbed by State action) to punish Plaintiff for the protected actions of his father, the Court cannot find at this stage that Defendants' alleged actions were objectively reasonable.  Because Defendants' entitlement to qualified immunity does not appear on the face of the First Amended Complaint, the Motion to Dismiss on grounds of qualified immunity is denied without prejudice to renewal on a more expansive record.

### d. Stay of Proceedings

Defendants argue that, even if this Court is satisfied that Plaintiff has adequately alleged a constitutional claim, this lawsuit should be stayed pending the resolution of Plaintiff's ongoing Section 75 hearing because:  (1) Plaintiff has a complete and adequate remedy under Section 75; (2) the factual issues raised in this lawsuit "rise and fall on the determinations that have yet to be made in the [Section] 75 proceeding;" and (3) whether the Section 75 proceeding has merit will be a critical consideration in this lawsuit.  (Defendants' Mem. of Law in Supp. of Their Mot. to Dismiss the Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) ("Defs.' Mem.") 18.)  Defendants argue

27

further that Plaintiff can be made whole by the Section 75 hearing with an award of back pay,

that discovery in this case will be streamlined by the outcome in the Section 75 hearing, and that

the Section 75 hearing officer's findings will have preclusive effect in this lawsuit. (*Id.* 19.)

According to Defendants, the hearing officer's "factual findings and legal conclusions . . . will go

a long way toward resolving this case." (Defs.' Reply 12.) In sum, Defendants claim that

considerations of judicial economy, comity, and deference to state proceedings require this Court

to stay the current lawsuit. (Defs.' Mem. 19.)

     In response to Defendants' stay argument, Plaintiff argues that he is not required to

exhaust any administrative remedy prior to bringing this Section 1983 suit, and that the outcome

of the Section 75 hearing has nothing to do with this lawsuit. (Pl.'s Mem. 17-18.) Plaintiff also

points out that, even if he receives back pay in the Section 75 hearing, Plaintiff can seek both

compensatory and punitive damages in the present civil rights claim. (*Id.* 19.) According to

Plaintiff, the ultimate issue in the Section 75 hearing – whether Plaintiff committed the

disciplinary infractions of which he is charged – and the ultimate questions in the present case –

whether Defendants intentionally interfered with various constitutional rights – have nothing to

do with one another. (*Id.* 19-20.)

     The Court will not stay the present lawsuit while the Section 75 proceeding is ongoing.[10]

Though the facts and circumstances underlying the two proceedings are related, they will

---

[10]It is questionable as to whether the Section 75 proceeding is actually ongoing, which
provides another reason for the Court to exercise its discretion to deny Defendants' request for a
stay. Defendants counsel indicated at oral argument that the proceeding had been suspended
because the hearing officer who was presiding resigned and that "at some point" a new hearing
officer would be designated to "pick up from where the previous hearing officer left off." (Hr'g
Tr. 5.) According to Plaintiff's counsel, however, the designation of a new hearing officer will
require the Section 75 proceeding to start over from the beginning. (*Id.* 29.)

ultimately deal with different questions, and the Court is not convinced that the outcome in the

Section 75 proceeding will be determinative of the issues in this case, as Defendants assert. If

the Section 75 hearing officer finds that Plaintiff did commit the charged disciplinary infractions,

such a finding will not resolve whether Plaintiff was improperly removed from the City payroll

pending his hearing in violation of his due process rights, or whether Defendants intended to

improperly interfere with Plaintiff's relationship with his father. *Cf. Rodriguez v. N.Y. City

Housing Auth.*, No. 96-CV-3229, 1998 WL 118153, at *2 (S.D.N.Y. Mar. 17, 1998) (denying

defendants' request for stay of federal discrimination action while Section 75 hearing ongoing

because issue of whether plaintiff engaged in misconduct was only "a small piece in th[e] larger

puzzle" and because federal claim would be litigated regardless of outcome of Section 75

proceeding). Plaintiff is not seeking vindication of his constitutional rights at the Section 75

hearing, and Plaintiff cannot receive damages for alleged civil rights violations from the Section

75 hearing or an Article 78 proceeding that may follow. *See Davidson v. Capuano*, 792 F.2d

275, 278 (2d Cir. 1986) (New York courts have indicated that damages for civil rights violations

are not included in the category of damages recoverable in Article 78 proceeding); *see also

Prestopnik v. Whelan*, 249 F. App'x 210, 212 (2d Cir. 2007) (damages for civil rights violations

not recoverable in Article 78 proceeding). Therefore, the present lawsuit can proceed

concurrently with the Section 75 proceeding.

## IV. Conclusion

For the reasons stated above, Defendants' Motion to Dismiss is granted in part and denied in part. In sum, Plaintiff's First Amendment claims are dismissed, but Defendants' Motion to Dismiss Plaintiff's due process and intimate association claims is denied. Defendants' Motion to Dismiss on the grounds of qualified immunity is also denied, as is their request for a stay of this lawsuit. The Clerk of Court is respectfully directed to terminate the pending Motion (Doc. 11).

SO ORDERED.

Dated: November 14, 2008
White Plains, New York

CATHY SEIBEL, U.S.D.J.

30